## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JOSEPH DAUZAT**                              **CIVIL ACTION NO:**

**VERSUS**                                     **14-00239 "KWR"**

**BESSIE CARTER, ET AL.**

### ORDER

Before the Court is the Defendants' **Daubert Motion or in the Alternative Motion in Limine (R. Doc. 89)** seeking an order excluding the testimony of Plaintiff's expert, Dr. Olga Fermo. The motion is opposed. R. Doc. 99. The motion was heard on the briefs.

I.    **Background**

Joseph Dauzat is housed at the Rayburn Correctional Center ("RCC") and filed the instant action against the Defendants alleging their failure to provide adequate medical care both pre-operatively and post-operatively. He seeks damages pursuant to 42 U.S.C. § 1983 and the United States Supreme Court's decision in *Estelle v. Gamble*, 429 U.S. 97 (1976), for deliberate medical indifference in violation of the Eighth Amendment's proscription against cruel and unusual punishment. The Court has previously set forth in great detail the factual background of his claims, which are incorporated herein by reference. R. Docs. 16, 22.

The Defendants filed the instant motion seeking an order preventing Dr. Olga Fermo from testifying in this matter. R. Doc. 89. They argue that Dr. Fermo is not qualified as an expert under Federal Rule of Evidence 702 because: (1) She lacks the experience necessary to provide expert testimony in the case; and (2) she does not understand the applicable standard of care. R. Doc. 89-1.

The motion is opposed. R. Doc. 99. Plaintiff argues that there is no legal authority to suggest that Dr. Fermo cannot be qualified as an expert because she has not been qualified

previously, there is no merit to the assertion that she requires a corrections background to be tendered as an expert, that the Defendants reliance on a Louisiana standard of care is misplaced because state requirements for expert qualification and reports do not bind experts in federal court, and there is a sufficient basis for Dr. Fermo's expert opinion.

## II.    Standard of Review

The admissibility of expert testimony is governed by Federal Rule of Evidence ("Rule") 702, which provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Civ. P. 702.

Rule 702 reflects the Supreme Court's decisions in *Daubert* and *Kumho*. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). The threshold inquiry is whether the expert possesses the requisite qualifications to render opinion on a particular subject matter. *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 799 (E.D. La. 2011); *see also Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject."). Having defined the permissible scope of the expert's testimony, a court next inquires whether the opinions are reliable and relevant. *See United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010). In undertaking the analysis, courts must give proper deference to the traditional adversary system and the role of the jury within that system. *See Daubert*, 509 U.S. at 596. As such, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional

and appropriate means of attacking shaky but admissible evidence." *Id.* As the "gatekeeper" of expert testimony, the trial court enjoys broad discretion in determining admissibility. *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013). In satisfying its "gatekeeper" duty, the Court will look at the qualifications of the experts and the methodology used in reaching their opinions and will not attempt to determine the accuracy of the conclusion reached by the expert. The validity or correctness of the conclusions is for the fact finder to determine after the *Daubert* analysis.

**III.    <u>Analysis</u>**

Defendants seek to exclude the testimony of Dr. Olga Fermo in this matter on the basis that she is not qualified as an expert. R. Doc. 89-1. They argue that Dr. Fermo finished her residency in 2015 and has never testified as an expert before. *Id.* at p. 2. Further, they contend that Dr. Fermo was not a licensed physician in Louisiana during the time periods relevant to the lawsuit and "cannot be considered an expert in correctional medicine" because she has never treated prisoners, nor been in a prison. *Id.* They argue that Dr. Fermo is unaware of the conditions in which Defendants treated the Plaintiff, has never lived in Louisiana, does not know where RCC is located, is unaware of the number of doctors or nurses at RCC, and did not consider the Plaintiff's status as an inmate. Defendants contend this lack of local knowledge prevents Dr. Fermo from rendering an opinion as to available resources and which precludes her from testifying as an expert. *Id.* at p. 3.

In addition, the Defendants state that the Plaintiff seeks to admit Dr. Fermo as an expert in neurology, but they argue she is not qualified to provide an expert opinion as to the standard of care. *Id.* They argue that the standard of care is tied to geography and availability of resources under La. R.S. § 9:2794 and that Dr. Fermo's explanation of a national, universal standard of care

does not comport with Louisiana law. *Id.* at p. 4. Defendants contend that Dr. Fermo could not articulate what her own concept of a national standard of care is or any difference between that and the Hippocratic oath. Further, they argue the Fifth Circuit requires an expert's opinion must be based on sufficient facts or data and that Dr. Fermo did not cite to a single specific medical or scientific guideline or standard either in her deposition or expert report. *Id.* at p. 6.

The Plaintiff opposes the motion. R. Doc. 99. He contends that any argument by the Defendants that Dr. Fermo is not qualified as an expert because she has not be been qualified before or has worked in a prison population is inconsistent with the jurisprudence. *Id.* at p. 2. The Plaintiff argues there is no authority to suggest that an expert cannot be qualified simply because they were not an expert previously. Further, Plaintiff argues that the contention that Dr. Fermo cannot opine as to Plaintiff's care because she does not have experience in correctional settings is without merit because she is being offered as an expert in neurology, not in correctional medicine.

In addition, the Plaintiff argues that the suggestion Dr. Fermo is not qualified to offer an expert opinion based on Louisiana state law's geographic definition of standard of care lacks merit because other section of this court have qualified experts not licensed in Louisiana, and Dr. Fermo is licensed in the state. The Plaintiff also argues that defendants' reliance on Louisiana state law definition of the standard of care is misplaced federal courts are not bound to follow a state law that is in some sense substantive and that state requirements for expert qualifications and reports do not bind experts in federal court, even if they are brought through diversity jurisdiction. *Id.* at pp. 3-4. According to the Plaintiff, any attempt to reduce the standard of care because of limited resources in Louisiana correctional settings fails because under federal law prisoner access to medical care cannot be restricted based on lack of funding. *Id.* at p. 4. Plaintiff states that Dr.

Fermo's opinion is clear on the standard of care based on her training, knowledge, and experience which is consistent with the Eighth Amendment's right to adequate medical care. *Id.* at pp. 4-5.

Finally, the Plaintiff argues that any *Daubert* challenge fails because Dr. Fermo clearly sets out her training and experience which form the basis of her opinion in her report and engages in a significant discussion of the record such that any suggestion that her report lacks a sufficient basis fails. *Id.* at p. 5.

First, the Court finds the argument that because Dr. Fermo has not been previously qualified as an expert in another case she cannot be qualified in this case fails. The Defendants have cited no authority to support this proposition, further, in their opposition the Plaintiff references an order issued by Judge Wilkinson which notes that, "[t]here is a first time in court for every expert." *Mounce v. Doe*, Civ. A. 12-669, 2014 WL 2587698, at *5 (E.D. La. June 10, 2014) (quoting *United States v. Parra*, 402 F. 3d 752, 758 (7th Cir. 2005)); *See also Paine ex rel. Ellman v. Johnson*, No. 06-cv-3173, 2010 WL 785398, at *3 (N.D. Ill. Feb. 26, 2010) ("there is a first time in court for every expert" and experts need not be "professional witnesses" to be qualified in their areas of expertise) (citations omitted); *Health & Sun Research Inc. v. Australian Gold, LLC*, No. 8:12–cv–2319–T–33MAP, 2013 WL 6086457, at *3 (M.D. Fl. Nov. 19, 2013). As a purely logical proposition the Defendants' argument must fail. There could be and would never be any expert opinions if they could not be qualified for the first time. In addition, the Court notes that this is not a case where Defendants are arguing that Dr. Fermo has been previously tendered as an expert and declined, but rather it's the first time being tendered as an expert.

Second, Dr. Fermo is being offered as an expert in neurology and not correctional medicine. Further, to the extent that Defendants argue that her testimony should be excluded because of her of lack of knowledge related to RCC, its location, its numbers of doctors and nurses,

or its relation to other facilities none of these questions or facts are grounds to exclude Dr. Fermo's testimony. Rather, they are better addressed on cross-examination.

Finally, Defendants cite to La. R.S. § 9:2794 to argue that the standard of care applicable is that of Louisiana law and that Dr. Fermo's application of a general or universal standard of care means that she should be excluded as an expert under that statute. The Court finds that Defendants' argument unpersuasive for two reasons. First, the Louisiana statute section cited by the Defendants references medical malpractice actions against a physician under Louisiana law. The current action is Plaintiff's allegation that the Defendant's violated the Eighth Amendment of the U.S. Constitution by failing to provide adequate medical care.

In order to demonstrate deliberate medical indifference a plaintiff must show that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). The Louisiana statute cited by the Defendants is for malpractice actions based on negligence for a physician licensed under Louisiana law, however that is inapplicable because Eighth Amendment claims for deliberate medical indifference require more than acts of negligence. Second, the statute cited has a section listing the requirements for the qualification of an expert witness in medical malpractice cases in Louisiana. However, Federal Rule of Evidence 702 governs and Defendants reliance on the Louisiana statute is misplaced.

The Court notes that Dr. Fermo received her medical degree from University of Connecticut, served as a medical intern at Yale Internal Medicine Primary Care Residency, was a resident/chief resident at Johns Hopkins Hospital, and was a fellow in headache and facial pain medicine as well as interventional pain medicine at the University of South Florida. R. Doc. 99-2. She has certifications in neurology, in the subspecialty of headache medicine, and the subspecialty of pain medicine, has been published, and is a member of the American Academy of Neurology. Dr. Fermo is licensed in both Florida and Louisiana to practice medicine and is currently a physician at the Oschner Neuroscience Institute. She also indicates she has prepared between 80 and 100 written, expert medical opinions on neurological and chronic pain management cases for an independent, private second medical opinion service. The Court finds that Dr. Fermo is qualified.

A review of Dr. Fermo's expert report indicates that she conducted a comprehensive review of the Plaintiff's medical records and reached opinions regarding the care that was provided in the instant case. The Court finds that Dr. Fermo's opinions are based on sufficient data and the product of reliable principles as applied to the data and facts reviewed and would be relevant to the instant case. The Court, therefore, denies the Defendants' motion.

## IV.    <u>Conclusion</u>

Accordingly,

**IT IS ORDERED** that the Defendants' **Daubert Motion or in the Alternative Motion in Limine (R. Doc. 89)** is **DENIED.**

New Orleans, Louisiana, this 9th day of May 2018.

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**